[No. A100485. First Dist., Div. One. Apr. 14, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
MIGUEL RAFAEL CANCECO ESPINOZA, Defendant and Appellant.

**COUNSEL**

Ozro William Childs, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Acting Assistant Attorney General, Moona Nandi and Kelly M. Croxton, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MARGULIES, J.**—Defendant Miguel Rafael Canceco Espinoza, an illegal alien subject to deportation, pleaded no contest to possession of heroin and was sentenced to 16 months in state prison. Defendant contends the trial court erred in denying him probation under the provisions of Proposition 36. In view of the substantial likelihood that defendant will be deported, we hold that probation is not mandatory under Proposition 36 because it is impossible to condition such probation on defendant's completion of a drug treatment program. Accordingly, we affirm the judgment sentencing defendant to state prison.

## BACKGROUND

Defendant was arrested on April 6, 2002, after police found 2.57 grams of heroin and 1.9 grams of methamphetamine in his pants pocket during a consensual search of his person. At the time of his arrest, defendant gave police a false name. He was thereafter charged by information with possession of heroin (Health & Saf. Code, § 11350, subd. (a)), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), and misdemeanor obstruction of a police officer (Pen. Code, § 148, subd. (a)(1)). The complaint further alleged that defendant suffered one prior prison term (Pen. Code, § 667.5, subd. (b)). On June 24, 2002, defendant pleaded no contest to one count of possessing heroin, and the People dismissed all remaining counts.

The plea agreement provided that defendant would be sent to drug court for an eligibility determination and sentencing under Penal Code section 1210.1.[1], [2] If found ineligible for drug treatment under section 1210.1, defendant agreed that he would be returned to the trial court for sentencing and could receive a maximum sentence of 16 months in state prison. The drug court determined that defendant was not eligible under section 1210.1, stating as its reason that defendant was being held without bail under a drug-related parole hold.

Defendant was referred back to the trial court for sentencing. A presentence report showed that defendant had been arrested and convicted of four alcohol-related driving offenses in 1990 and 1991. According to the report,

---

[1] Penal Code section 1210.1, enacted by the voters as part of the Substance Abuse and Crime Prevention Act of 2000 (Proposition 36) requires eligible defendants convicted of nonviolent drug offenses to be placed on probation conditioned on "participation in and completion of an appropriate drug treatment program." (Pen. Code, § 1210.1, subd. (a); see generally *People v. Campbell* (2003) 106 Cal.App.4th 808, 811-814 [131 Cal.Rptr.2d 221].)

[2] All further statutory references are to the Penal Code, unless otherwise noted.

defendant failed four grants of conditional sentences between 1991 and 1994. He failed to enroll in the Drinking Driver Program, failed to report to jail as directed, and failed to make multiple court appearances. The report stated that defendant also violated all three parole grants due to new violations. In 1996 and again in 2001, defendant was paroled to the Immigration and Naturalization Service (INS) and was deported to Mexico. Both times he illegally reentered the United States in violation of his parole conditions. Defendant was also convicted of felony escape in 1994 and additional drunk driving offenses in 1998. INS was notified of defendant's present conviction, but had not placed a hold on him as of the date he was sentenced in this case.

At defendant's sentencing hearing, defense counsel requested sentencing under section 1210.1. The trial court denied the request, stating that defendant was "claiming . . . an entitlement to treatment, not really expressing a real desire to be in it," and noting that defendant had not sought treatment while in jail awaiting disposition and that he had a parole hold. The court sentenced defendant to 16 months in state prison. Defendant timely appealed. This court denied defendant's petition for writ of habeas corpus without prejudice on December 11, 2002.

## DISCUSSION

■■■ The sole issue in this case is whether the trial court erred in sentencing defendant to a state prison rather than placing him on probation under section 1210.1. Section 1210.1 provides in pertinent part as follows: "(a) Notwithstanding any other provision of law, and except as provided in subdivision (b), any person convicted of a nonviolent drug possession offense shall receive probation. *As a condition of probation the court shall require participation in and completion of an appropriate drug treatment program. . . .* [¶]· . . . [¶] (b) Subdivision (a) does not apply to . . . : [¶] (1) Any defendant who previously has been convicted of one or more serious or violent felonies in violation of subdivision (c) of Section 667.5 or Section 1192.7 [unless specified exceptions apply]. [¶] (2) Any defendant who, in addition to one or more nonviolent drug possession offenses, has been convicted in the same proceeding of a misdemeanor not related to the use of drugs or any felony. [¶] (3) Any defendant who: [¶] (A) While using a firearm, unlawfully possesses any amount of (i) a substance containing either cocaine base, cocaine, heroin, methamphetamine, or (ii) a liquid, nonliquid, plant substance, or hand-rolled cigarette, containing phencyclidine. [¶] (B) While using a firearm, is unlawfully under the influence of cocaine base, cocaine, heroin, methamphetamine or phencyclidine. [¶] (4) *Any defendant who refuses drug treatment as a condition of probation.* [¶] (5) Any defendant who (A) has two separate convictions for nonviolent drug

possession offenses, (B) has participated in two separate courses of drug treatment pursuant to subdivision (a), and (C) is found by the court, by clear and convincing evidence, to be unamenable to any and all forms of available drug treatment." (§ 1210.1, subds. (a) & (b), italics added.)

The People contend, first, that defendant was not eligible for probation under section 1210.1 because he refused drug treatment as a condition of probation for purposes of subdivision (b)(4). According to the People, that refusal consisted of defendant's failure to attend drinking driver programs that he was ordered to take as part of conditional sentences imposed on him in 1991. We do not find this argument persuasive. ▮ Setting aside our substantial doubt that a drinking driver program qualifies as a "drug treatment program" for purposes of section 1210.1,[3] subdivision (b)(4) simply means that the court may refuse probation to a nonviolent drug offender when the offender refuses to accept drug treatment as a condition of his probation. A *past* refusal of drug treatment in some *other* case, let alone a refusal to take a drinking driver class, is immaterial under that subdivision. The People offer no authority for their much more expansive reading of this exception.

▮ The People argue further that defendant was excluded from probation under section 1210.1 because, as an illegal alien who was subject to deportation from the United States, defendant could not satisfy the mandatory condition of probation, that he complete a drug treatment program. We agree. Defendant's immigration status and criminal history make it highly unlikely that he could complete any court-ordered drug treatment before being deported. We do not believe that section 1210.1 compels the trial court to grant probation when the primary purpose and condition of that probation—that the defendant obtain drug treatment—cannot effectively be achieved.

Uncodified provisions of Proposition 36 informed voters that its purpose and intent was "(a) To divert from incarceration into community-based substance abuse treatment programs nonviolent defendants, probationers and parolees charged with simple drug possession or drug use offenses; [¶] (b) To halt the wasteful expenditure of hundreds of millions of dollars each year on the incarceration—and reincarceration—of nonviolent drug users who

---

[3]Nothing in the statutory definition of "drug treatment programs" suggests that it extends to drinking driver programs: "The term 'drug treatment program' or 'drug treatment' means a state licensed and/or certified community drug treatment program, which may include one or more of the following: outpatient treatment, half-way house treatment, narcotic replacement therapy, drug education or prevention courses and/or limited inpatient or residential drug treatment as needed to address special detoxification or relapse situations or severe dependence." (§ 1210, subd. (b).)

would be better served by community-based treatment; and [¶] (c) To enhance public safety by reducing drug-related crime and preserving jails and prison cells for serious and violent offenders, and to improve public health by reducing drug abuse and drug dependence through proven and effective drug treatment strategies." (Prop. 36, § 3; see Historical and Statutory Notes, 51 West's Ann. Pen. Code (2003 supp.) foll. § 1210, p. 221.)

To achieve these fundamental objectives, section 1210.1 places two important mandates on the trial court. First, assuming the defendant qualifies as a nonviolent drug offender eligible for drug treatment, the court *must* offer probation in lieu of a jail sentence.[4] Second, and of even greater importance in attaining the objectives of Proposition 36, such probation *must* be conditioned on "participation in *and completion* of an appropriate drug treatment program." Thus, the ultimate objective of Proposition 36 is not to mandate probation in lieu of jail sentences. It is to *substitute* community-based drug treatment for jail sentences as a means of dissuading eligible offenders from continued drug use. As the voters were informed in the opening sentence of the ballot pamphlet summary, Proposition 36 "[r]equires probation *and drug treatment,*" rather than incarceration, for simple drug possession offenses. (Ballot Pamp., Gen. Elec. (Nov. 7, 2000) summary of Prop. 36, p. 3, italics added.)

█ The courts have long recognized that the decision whether to grant probation to a deportable alien presents special issues. In *People v. Sanchez* (1987) 190 Cal.App.3d 224 [235 Cal.Rptr. 264], the Court of Appeal held that a defendant's status as an illegal alien is highly relevant to the issue of whether to grant probation because it bears directly on whether the defendant can comply with the terms of probation. (*Id.* at pp. 230-231.) The appellate court observed that "[w]hen dealing with an illegal . . . alien, the trial judge must assume, barring presentation of . . . credible evidence to the contrary, a defendant will be deported upon completion of any term of incarceration imposed," and that deportation is especially likely "where a defendant is convicted of possession or sale of a controlled substance." (*Id.* at p. 230; see also *People v. Cisneros* (2000) 84 Cal.App.4th 352, 358 [100 Cal.Rptr.2d 784] [defendant's illegal alien status is an appropriate factor to consider in deciding whether to offer drug treatment under a discretionary program].) █ In this case, the strong probability that defendant will be deported before he can satisfy the drug treatment condition of his probation

---

[4]Offenders who were already on probation for a nonviolent drug possession offense on Proposition 36's effective date and who violate their probation by committing a new drug possession offense need not be offered probation and drug treatment. (§ 1210.1, subd. (e)(3)(D), (E) & (F); *People v. Williams* (2003) 106 Cal.App.4th 694, 696 [131 Cal.Rptr.2d 546].)

would entirely frustrate the objectives of Proposition 36. (See *People v. Esparza* (2003) 107 Cal.App.4th 691 [132 Cal.Rptr.2d 377] [trial court not required to engage in the superfluous act of placing defendant on Prop. 36 probation when he cannot participate in the treatment program required as a condition of that probation].)

Defendant points out that his current conviction might not make him deportable "as a drug felon." (See *U.S. v. Robles-Rodriguez* (9th Cir. 2002) 281 F.3d 900; cf. *U.S. v. Arellano-Torres* (9th Cir. 2002) 303 F.3d 1173.) However, whether classified as a drug felon or not, there is ample reason to assume that defendant will be deported again. He is admittedly here illegally. He has twice previously been deported after committing crimes, and he continued to violate this country's laws after twice illegally reentering this country following deportation. By any measure, defendant is a prime candidate for deportation.[5]

But defendant counters that his right to probation and drug treatment under Proposition 36 is guaranteed irrespective of how certain he is to be deported. He argues that Proposition 36 requires drug treatment to be made broadly available to eligible offenders in whatever locations are most feasible for them, whether in another state or in the offender's home country. According to defendant, the language of section 1210 specifying that drug treatment programs be "state licensed and/or certified" in no way precludes referral of the defendant to an approved drug treatment program in Mexico, to be paid for by the state.

Such an expansive reading of the state's obligation to provide drug treatment finds no support in Proposition 36. Nothing in the text of the proposition, or in the ballot arguments and analyses regarding it, suggested that if this measure was enacted California would be compelled to license, certify, and fund drug treatment programs on a worldwide basis. Such an undertaking would be utterly impractical as well as prohibitively expensive.

---

[5] It is not unreasonable for the trial court to assume that the INS will act to deport defendant in furtherance of its federal statutory duties. (See Evid. Code, § 664 [presumption that official duties are regularly performed].) In fact, it is California public policy to *facilitate* deportation of undocumented aliens who commit drug offenses in this state. Penal Code section 5025 establishes procedures to identify and transfer custody of undocumented aliens incarcerated in California to the INS. Uncodified legislative findings accompanying the adoption of section 5025 emphasized that one of its overriding purposes was to focus INS deportation efforts in California on undocumented aliens involved in drug-related crimes, in part to alleviate the burden of these crimes on our communities and courts. (Historical and Statutory Notes, 51C West's Ann. Pen. Code (2000 ed.) foll. § 5025, p. 225.) Health and Safety Code section 11369 mandates notice to the INS whenever there is reason to believe that a person arrested for certain drug offenses in California, including simple possession, may not be a citizen of the United States.

California authorities have no effective means to evaluate or certify treatment programs based in other jurisdictions. Moreover, no California court can lawfully compel a noncitizen to attend a drug treatment program in his country of origin. Our probation departments cannot force foreign treatment providers to make the reports and notifications required by the statute. (See § 1210.1, subd. (c).) Our courts lack jurisdiction to enforce their probation conditions or to remand the defendant into custody on foreign soil.

In short, once a nonviolent drug possession offender has been deported from the United States, the premises, requirements, and objectives of Proposition 36 can no longer be satisfied. Accordingly, where the defendant faces a substantial likelihood of imminent deportation, such that his probation cannot effectively be conditioned on completion of a drug treatment program, we hold that that section 1210.1 does not preclude the trial court from exercising its discretion to deny probation. Imposition of a state prison sentence in this case was therefore permissible under Proposition 36.

### Disposition

The judgment is affirmed.

Marchiano, P. J., and Swager, J., concurred.

A petition for a rehearing was denied May 12, 2003.