The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Cesar HERNANDEZ–CLAVEL, Defendant–Appellant.

No. 06CA1807.

Colorado Court of Appeals, Div. IV.

Feb. 7, 2008.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2007.

John W. Suthers, Attorney General, Corina Gerety, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Chief Judge DAVIDSON.

Defendant, Cesar Hernandez–Clavel, appeals the sentence imposed following the judgment of conviction entered upon his guilty plea to theft by receiving. The issue presented is whether the circumstances relating to defendant's status as an illegal alien subject to deportation were proper considerations in the sentencing court's decision to grant or deny probation. We conclude that they were and, therefore, we affirm.

Pursuant to a plea agreement, defendant pleaded guilty to one count of theft by receiving in exchange for the dismissal of other charges against him. Defendant is in this country illegally and is subject to deportation.

At sentencing, defense counsel informed the court that defendant had been rejected by community corrections because he would not be able to work legally and by the probation department because he was deemed a flight risk. Counsel acknowledged that Immigration and Customs Enforcement (ICE) had placed a hold on defendant, and presented several likely scenarios depending on the sentence he received:

- If defendant were sentenced to probation, he would likely be held in custody and deported.
- If ICE released its hold, defendant would be able to complete probation, obtain a job, and pay restitution.
- If defendant were sentenced to the Department of Corrections (DOC), he would serve the sentence and then be deported.

Defense counsel expressed concern that, although, in his view, defendant was an excellent candidate for probation, defendant might be denied that opportunity because of his immigration status.

The prosecutor opposed probation for defendant because he had an immigration hold, would possibly be deported, and, therefore, would not be adequately punished for his offense.

The court denied defendant's probation request. In its ruling, the court stated its firm belief in defendant's culpability, despite defendant's denials during allocution. The

court emphasized that all defendant's difficulties were self-inflicted:

> [H]e chose to come into this country illegally. He may have exited and come back in, but then he doesn't have the ability to lawfully work at a job while he's here, and the consequences that befall that, including the crimes for which he was being sentenced, "are circumstances that he put into place."

The court also expressed concern that adequate punishment should be imposed:

> There has to be a consequence for [the criminal conduct], and probation certainly under these circumstances would clearly not work. He'll be quickly, probably, whisked out of the United States, and I don't know what he's going to choose to do. It doesn't seem to me that that answers all of the questions, and it certainly doesn't address the fact that there has to be more of a consequence for [his conduct].

The court sentenced defendant to two years in the DOC plus a three-year period of mandatory parole. Defendant then filed this direct appeal.

## I.

■ As a threshold matter, we address and reject the People's argument that the appeal should be dismissed. We agree with the People that the grant or denial of probation, as a discretionary determination, is not subject to appellate review. *See* § 18–1.3–104(1)(a), C.R.S.2007; *People v. Newman*, 91 P.3d 369, 374 (Colo.2004). But, the statute is not so limited as the People suggest. Here, defendant's contention is that the denial of probation was based on considerations not statutorily or constitutionally authorized. We consider that a proper issue for appeal. *See People v. Rossman*, 140 P.3d 172, 174 (Colo.App.2006) (appellate review of probationary sentence is warranted when defendant alleges that the trial court exceeded its statutory authority in imposing the sentence); *cf. People v. Young*, 987 P.2d 889, 894 (Colo.App.1999) (vacating sentence for improper consideration of defendant's right to silence); *People v. Wilson*, 43 Colo.App. 68, 71, 599 P.2d 970, 973 (1979) (vacating sentence for improper consideration of trau-

ma to victims caused by their having to testify).

## II.

■ Defendant contends that the sentencing court exceeded its authority by basing its decision to deny probation on impermissible factors. Raising a question of first impression, he argues that the court improperly considered his status as an illegal alien and the possibility he could be deported. We disagree.

■ Colorado courts are given wide discretion in determining an appropriate sentence. This includes the discretion to consider a wide variety of factors, including the circumstances of the offense, individual characteristics of the offender, and prior conduct. *See People v. Garberding*, 787 P.2d 154, 158 (Colo.1990) ("the sentencing court's responsibility is to individualize and tailor a sentence to fit the crime and the particular defendant before the court"); *People v. Graham*, 678 P.2d 1043, 1048–49 (Colo.App.1983) ("in determining an appropriate sentence, the trial court may conduct a broad inquiry, largely unlimited as to the kinds of information it may consider").

Such broad discretion serves the purposes of protecting the public, punishing and rehabilitating the offender, and deterring other offenses. *See* § 18–1–102, C.R.S.2007; *Adair v. People*, 651 P.2d 389, 392 (Colo. 1982) ("All relevant factors may be considered to determine which alternative is most appropriate to meet the sentencing goals and policies of deterrence, punishment, rehabilitation, and protection of the public.").

■ A court may not base any sentencing determination on a defendant's race or national origin, or on the fact that he or she is a citizen of a foreign state. *See, e.g., United States v. Leung*, 40 F.3d 577, 586 (2d Cir. 1994) (defendant's race or nationality may play no adverse role in the administration of justice, including sentencing); *United States v. Onuuemene*, 933 F.2d 650, 651 (8th Cir. 1991) (defendant's right to due process violated when court imposed harsher sentence based on his national origin and alienage)

(citing *United States v. Borrero–Isaza*, 887 F.2d 1349, 1352 (9th Cir.1989)); *People v. Gjidoda*, 140 Mich.App. 294, 364 N.W.2d 698, 701 (1985) (sentencing based on national origin or alienage violates equal protection). Here, however, nothing in the record indicates that in denying probation, the sentencing court was punishing defendant for his race, national origin, or Mexican citizenship.

Nonetheless, defendant points out, the sentencing court considered the circumstances of his illegal alien status and the possibility of his deportation in its decision to deny probation. Relying on *United States v. Alvarez–Cardenas*, 902 F.2d 734, 737 (9th Cir.1990), and *State v. Mendoza*, 638 N.W.2d 480, 484 (Minn.Ct.App.2002), he argues that such circumstances are not relevant to the nature of the defendant or to the crime and are impermissible factors in the decision whether to grant or deny probation. We disagree.

A sentencing court "may grant probation to a defendant unless, having regard to the nature and circumstances of the offense and to the history and character of the defendant," it determines that imprisonment is more appropriate for the protection of the public. § 18–1.3–203(1), C.R.S.2007. In making that determination, the court may consider, inter alia, whether a sentence to probation would diminish the seriousness of the offense; whether defendant has led a law-abiding life for a substantial period of time prior to the crime; or whether the defendant is likely to respond affirmatively to probationary treatment. § 18–1.3–203(1)(c), (2)(g), (j), C.R.S.2007 (listing criteria for granting probation).

■ A sentence to probation requires that a defendant live successfully in the community. Accordingly, conditions of probation generally include specific requirements that the defendant obtain employment, pay restitution, live peaceably, and report regularly to a probation officer. *See* § 18–1.3–204, C.R.S. 2007. In determining the appropriateness of a sentence to probation, a trial court, therefore, must evaluate the likelihood that a defendant has the ability to successfully comply with these conditions.

Although consideration of a defendant's status as a foreign national, in and of itself, is improper, we agree with those courts in other jurisdictions that have determined that the surrounding circumstances of a defendant's alien status may be relevant to a sentencing court's decision whether to grant or deny probation. *See People v. Sanchez*, 190 Cal.App.3d 224, 231, 235 Cal.Rptr. 264, 267 (1987) (fact of illegal alien status does not preclude grant of probation, but court may consider that fact with all other relevant factors); *Yemson v. United States*, 764 A.2d 816, 819 (D.C.2001) (sentencing court may not treat defendant any differently from other defendants solely because of alien status; however, in considering a sentence of probation, court is not required to "close its eyes" to a defendant's status as an illegal alien); *see also State v. Martinez*, 38 Kan.App.2d 324, 165 P.3d 1050, 1055–57 (2007) (the fact that defendant is an illegal alien may, under certain circumstances, be a substantial and compelling reason to depart from sentencing guidelines and deny probation).

As some courts have pointed out, the circumstances of a defendant's illegal alien status can be relevant to a court's probation determination because they may demonstrate the defendant's unwillingness to conform his or her conduct to the conditions of probation. *See United States v. Gomez*, 797 F.2d 417, 419 (7th Cir.1986) (sentencing judge has wide discretion to consider all reliable and pertinent information which might reasonably bear on the court's decision; illegal entry into this country is no different from any other recent prior illegal act); *Alexander v. State*, 837 N.E.2d 552, 556 (Ind.Ct.App.2005) (defendant's illegal status and the fact that he took no steps to rectify it demonstrated his disregard for the law), *disapproved of on other grounds by Ryle v. State*, 842 N.E.2d 320 (Ind.2005); *State v. Zavala–Ramos*, 116 Or.App. 220, 840 P.2d 1314, 1317 (1992) (immigration status cannot be considered as a per se aggravating factor but it is not irrelevant to whether a defendant can conform his conduct to legal requirements).

Other courts have reasoned that a defendant's inability to remain in the jurisdiction to benefit from probation, or if he stays, his inability to comply with a condition of probation, is relevant to whether a probation sen-

tence would be at all effective. *See People v. Espinoza,* 107 Cal.App.4th 1069, 1076, 132 Cal.Rptr.2d 670, 675 (2003) (trial court free to exercise discretion to deny probation where defendant faces substantial likelihood of imminent deportation); *State v. Svay,* 828 A.2d 790, 794 (Me.2003) (possibility of deportation may be considered by the court because the impact that a particular sentence will have on the offender is relevant to the offender's likelihood of rehabilitation).

At defendant's sentencing hearing in this case, the court was presented, as relevant here, with the following information:

- Defendant was in the United States illegally.
- He had been back and forth across the border several times.
- He admitted using false residence cards to obtain entry into this country.
- He had a 2006 conviction for attempted illegal entry and had received a three-day jail sentence.
- He claimed that he had pleaded guilty so he could return quickly to Mexico.
- He was not legally able to obtain employment.
- ICE recently had placed an immigration hold on defendant, and unless it released the hold, defendant would be deported either immediately, if sentenced to probation, or as soon as he had finished a sentence to DOC.
- Costs and restitution were likely to be in the thousands of dollars.

In its sentencing ruling, after discussing its disbelief of defendant's post-plea protestations of innocence, the court found that it was through defendant's own actions that he could not maintain lawful employment and, consequently, could not successfully meet that condition of probation. The court also was concerned that, because it appeared that defendant was likely to be deported, he could not benefit from participation in probation and would suffer no consequences for his criminal behavior. The court also considered, based on the information presented, that it appeared that defendant probably would be deported immediately if he received probation and, therefore, costs and restitu-

tion, which were significant, would never be paid.

But, defendant points out, whether he would be deported was not within the control of the sentencing court. Thus, he contends, the possibility of his deportation was too speculative to have been fairly considered. However, even assuming that under some circumstances that might be so, the court's concern here that defendant would not be available to participate in probation—either by deportation or by his own actions—has ample record support.

Defense counsel suggested at the sentencing hearing that defendant thought his prior conviction for illegal entry was "inaccurate," but every other fact pertaining to the circumstances of defendant's history and illegal status was admitted or undisputed. Moreover, the court knew that the probation department had rejected defendant because it considered him to be a flight risk, that defendant admitted he had pleaded guilty only so he could go back to Mexico, and that whether defendant was sentenced to DOC or sentenced to probation, he was likely to be deported.

Accordingly, we conclude that the sentencing court did not err in considering the circumstances surrounding defendant's status as an illegal alien in its decision whether to grant or deny defendant a sentence of probation.

■ Contrary to defendant's contention, we find no violation of defendant's equal protection rights. Although principles of equal protection require that similarly situated persons be treated in a similar manner, they do not require that a defendant receive an identical sentence to that imposed on another defendant for the same offense so long as the statutory sentencing ranges are the same for all persons convicted of the same or similar offenses. *People v. McCarty,* 851 P.2d 181, 185 (Colo.App.1992), *aff'd,* 874 P.2d 394 (Colo.1994); *see also People v. Jenkins,* 180 Colo. 35, 38, 501 P.2d 742, 743 (1972) (the individualized nature of sentencing arises from the discretion granted to the sentencing court and does not implicate equal protection). Defendant's sentence here falls within

the applicable statutory range. *See* §§ 18–1.3–401(1)(a)(V)(A), 18–4–410, C.R.S.2007.

The sentence is affirmed.

STERNBERG * and KAPELKE *, JJ., concur.