# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs April 21, 2010

## STATE OF TENNESSEE v. KET T. VOUN

### Appeal from the Criminal Court for Davidson County
No. 2008-C-3116     Cheryl Blackburn, Judge

### No. M2009-01526-CCA-R3-CD - Filed May 13, 2010

The Defendant, Ket T. Voun, a Cambodian native, was convicted, upon his guilty pleas, of aggravated robbery and facilitation of second degree murder. Following a sentencing hearing, the Davidson County Criminal Court ordered him to serve his eight-year sentence for facilitation of second degree murder in total confinement. He now appeals, arguing that, due to his likely deportation for these crimes, a probationary sentence was warranted. After a review of the record, we affirm the sentencing decision of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

DAVID H. WELLES, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Jodie A. Bell, Nashville, Tennessee, for the appellant, Ket T. Voun.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

A Davidson County grand jury returned a three-count indictment against the Defendant on September 22, 2008, charging him with first degree felony murder, especially aggravated robbery, and aggravated robbery. On April 30, 2009, the Defendant pleaded guilty to facilitation of second degree murder, a Class B felony, and aggravated robbery, also a Class B felony. See Tenn. Code Ann. §§ 39-11-403, -13-210, -13-402. The especially

aggravated robbery count was dismissed. At the Defendant's guilty plea hearing, the State detailed the following uncontested facts:

> [B]oth of these incidents that [the Defendant] is pleading guilty to occurred on November the 20th of 2006. Count 3 was the first in chronological order, and that would be the robbery of Mike's Discount Tobacco at 1027 8th Avenue South where the store clerk there was a Mr. Yoseph Badaway (phonetic). The proof would be that some men—two men went into the store and robbed Mr. Badaway at gunpoint. [The Defendant] by his statements, after this was over and after he got arrested, was out in the car along with another person, Mr. Benny Osborne (phonetic), awaiting Mr. Timothy Ward and Mr. Musin (phonetic) to commit this robbery and come back. [The Defendant] had had a beef with Mr. Badaway in the past, and that figured into the selection, I believe, of this person to rob.
>
> After that robbery, they went to another location, which is where Ms. Alysa Meas lived, and discussed what they were going to do next and decided to go and do another robbery. And on that one [the Defendant] was the driver of the car that took Mr. Ward and Mr. Musin to the Omid Market at 106 Rains Avenue where that robbery went bad. They did rob the store, but during the course of that Mr. Musin shot and killed Mr. Ebadollah Ghorbani. Now, as I mentioned, [the Defendant] when he was caught, did not admit all of that. He admitted to the first robbery and hinted at what occurred in the second one but then agreed to cooperate with the State and testified in Mr. Ward's trial and was ready, willing, and able to testify in Mr. Musin's trial. And this occurred in Davidson County.

Pursuant to the terms of the plea agreement, the Defendant received terms of eight years for each conviction; these terms to be served consecutively to one another for an effective sixteen-year sentence as a Range I, standard offender. The eight-year sentence for aggravated robbery was to be served in the Department of Correction. The sole issue left for the trial court's determination was the manner of service on the eight-year sentence for facilitation of second degree murder.

At the Defendant's subsequent sentencing hearing, the Defendant presented several witnesses on his behalf. Jay Lawrence, Executive Director of Urban Services at the YMCA, testified that he met the Defendant when he was an eight-year-old Cambodian refugee. At that time, the Defendant lived in small apartment complex with other Cambodian families; he lived with his mother, father, and siblings. According to Mr. Lawrence, the Defendant's parents, who did not speak English, had a difficult time adjusting to American life. The

-2-

Defendant needed a "lot of educational assistance"; he was involved in a number of tutoring programs, but never graduated from high school. They stayed in contact throughout the years.

Prior to the Defendant's arrest on these charges, he participated in a program called Y Build, which gives young men an opportunity to learn construction skills, life skills, and team building. The participants live on a campus in a "structured and supportive environment." Mr. Lawrence stated that the Defendant wanted to make a change in his life. At first, the Defendant did well in the program and got a job at Wasco. Just prior to going in to Phase Two of the program, the Defendant got arrested on the present charges. Mr. Lawrence testified that, prior to the Defendant's arrest, he had noticed a positive change in the Defendant.

Next, immigration lawyer Phillip Scott Cargile testified that he had known the Defendant since 1987, when he was involved in a tutoring program for Cambodian refugee children. Mr. Cargile remembered that the Defendant lived in a very small space and that the Defendant's father passed away. According to Mr. Cargile, the Defendant's brother-in-law was not "very nice to him."

Mr. Cargile returned to Nashville upon completing law school, and he was contacted by the Defendant four or five years after his return. He gave the Defendant some advice on immigration law matters. The Defendant was not a United States citizen but rather a permanent resident. Mr. Cargile testified that, as a consequence of the Defendant's plea, it was very likely that the Department of Homeland Security would initiate deportation proceedings. According to Mr. Cargile, if the Defendant were released on probation, he would immediately be placed in the custody of the Department of Homeland Security and detained until deported. Upon his return to Cambodia, the Defendant would likely be detained by the Cambodian government for an indefinite period of time, as such was the policy of that government. Mr. Cargile noted that he had spoken with the Defendant and that the Defendant quickly took responsibility for his criminal actions.

The thirty-one-year-old Defendant testified on his own behalf. The Defendant took "full" responsibility for his actions and was very sorry for what had happened to the victim. Due to his cooperation with the State against the other individuals involved, he had been "jumped" while incarcerated. He also relayed that, if he could do things differently that day, he would. On cross-examination, the Defendant agreed that, at the time these offenses occurred, he was twenty-eight years old, but that Musin was a juvenile and Ward was only eighteen or nineteen.

After hearing the evidence presented, the trial court determined that the Defendant was not an appropriate candidate for alternative sentencing and ordered that his eight-year sentence be served in the Department of Correction. The Defendant filed the instant timely appeal.

**Analysis**

The Defendant challenges the trial court's denial of probation or another form of an alternative sentence. Specifically, the Defendant maintains that his "unique situation" warrants a probationary sentence, noting that he will first have to serve his eight-year sentence for aggravated robbery, that he was not one of the primary aggressors, that he cooperated with the prosecution, that he had no significant criminal history, that he had engaged in rehabilitative efforts and accepted responsibility for his actions, and that he would likely be deported as a result of these convictions.

The trial court denied alternative sentencing finding that confinement was necessary to avoid depreciating the seriousness of the offense and that confinement was particularly suited to provide an effective deterrence to others likely to commit similar offenses. See Tenn. Code Ann. § 40-35-103(1)(B). The court found the circumstances of the offense to be particularly violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive degree:

> So what we have here is a felony murder where someone—he was also a foreign national who came to this country, had a business, and [the Defendant] drove two people over who killed him. And then they left. After having just been involved in another aggravated robbery over at the tobacco store where he did plead guilty. So that's one of those circumstances that is so horrifying. You go from robbery to robbery. And the other is general deterrence is necessary in this particular case. It's the nature of the offense that outweighs all other factors about placing him on probation. And I'm not sure from everything that everybody tells me that this would make much sense to do it, anyway.

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant

facts and circumstances." State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999); see also State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see also Carter, 254 S.W.3d at 344-45.

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b); see also Carter, 254 S.W.3d at 343; State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).

Effective June 7, 2005, our legislature amended Tennessee Code Annotated section 40-35-102(6) by deleting the statutory presumption that a defendant who is convicted of a Class C, D, or E felony, as a mitigated or standard offender, is a favorable candidate for alternative sentencing. Our sentencing law now provides that a defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D or E felony, *should* be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. A court shall consider, but is not bound by, this advisory sentencing guideline." Tenn. Code Ann. § 40-35-102(5), (6) (emphasis added). No longer is any defendant entitled to a presumption that he or she is a favorable candidate for alternative sentencing. Carter, 254 S.W.3d at 347.

The following considerations provide guidance regarding what constitutes "evidence to the contrary":

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1); see also Carter, 254 S.W.3d at 347. Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. Tenn. Code Ann. § 40-35-103(5).

The Defendant's eight-year sentence resulted from his conviction for a Class B felony. Because the Defendant was convicted of a Class B felony, the legislative preference that the Defendant "should be" considered as a favorable candidate for alternative sentencing is not applicable. In light of his status as a Class B felon it is the Defendant who bears the burden of establishing suitability for an alternative sentencing option.

Based upon our de novo review, we conclude that the record supports a sentence of total incarceration. First, we must note that the record before this Court contains no proof of the need for deterrence. See State v. Hooper, 29 S.W.3d 1, 9-11 (Tenn. 2000). In as much as the trial court denied an alternative sentence on this ground, the proof fails to support deterrence as a basis for the denial of an alternative sentence. There are other reasons, however, which warrant denial.

The trial court found that confinement was necessary to avoid depreciating the seriousness of the offenses. In order to deny an alternative sentence based upon the seriousness of the offense, "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the nature of the offense must outweigh all factors favoring an alternative sentence. State v. Hartley, 818 S.W.2d 370, 375 (Tenn. Crim. App. 1991); see also State v. Blackhurst, 70 S.W.3d 88, 98 (Tenn. Crim. App. 2001). The Defendant directed the men to the location of the first robbery, Mike's Discount Tobacco, in part, because he had a "beef" with the store clerk. The Defendant was the driver of the automobile and waited while the two men committed the robbery; both men were substantially younger than the Defendant. They then stopped and regrouped, planning another robbery. During the second robbery, the store owner was shot and killed. The Defendant again was the driver of the "getaway" vehicle; his actions constituted first degree murder. See Tenn. Code Ann. § 39-13-202(a)(2). See, e.g., State v. Shannon Corley, No. E2000-00382-CCA-R3-CD, 2000 WL 1285250, at *3 (Tenn. Crim. App., Knoxville, Sept. 12, 2000) (denial of alternative sentencing warranted when defendant broke into two different houses in the same day and stole property therein). Multiplicity of offenses committed over a short period of time may

support this "excessive or exaggerated degree" requirement. See State v. Zeolia, 928 S.W.2d 457, 462 (Tenn. Crim. App. 1996) (involving a defendant who participated in the burning of four barns within forty-eight hours.). Participation in a crime spree, comprising purposeful and repeated actions, contravenes the argument for alternative sentencing.

Moreover, regarding the Defendant's argument about his "unique situation" due to his likely deportation, this Court has noted as follows:

> "The courts have long recognized that the decision whether to grant probation to a deportable alien presents special issues." People v. Espinoza, 107 Cal. App. 4th 1069, 1074 (Cal. Ct. App. 2003) (trial court free to exercise discretion to deny probation where defendant faces substantial likelihood of deportation); see also People v. Sanchez, 190 Cal. App.3d 224, 231 (Cal. Ct. App. 1987) ("We do not suggest illegal alien status should preclude the granting of probation. Rather, we conclude only that such fact may properly be considered by the sentencing court *with all other relevant factors* in exercising its discretion in this regard.") (emphasis added).

State v. Walter Pablo, No. W2007-02020-CCA-R3-CD, 2008 WL 2938090, at *6 (Tenn. Crim. App., Jackson, July 30, 2008). The trial court properly considered the Defendant's immigration as a factor in addition to the sentencing principles and all relevant facts and circumstances. We cannot conclude that the trial court erred or abused its discretion by denying probation or another form of an alternative sentence.

### Conclusion

Based on the foregoing reasoning and authorities, we conclude that the trial court did not err in denying the Defendant an alternative sentence. The judgments of the Davidson County Criminal Court is affirmed.

_____
DAVID H. WELLES, JUDGE