Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/13/2017 09:09 AM CST

State of Nebraska, appellee, v.
Jose D. Cerritos-Valdez, appellant.
___ N.W.2d ___

Filed January 13, 2017.    No. S-16-314.

1.  **Sentences: Probation and Parole.** Whether probation or incarceration
    is ordered is a choice within the discretion of the trial court, whose
    judgment denying probation will be upheld in the absence of an abuse
    of discretion.
2.  **Judgments: Words and Phrases.** An abuse of discretion occurs when a
    trial court's decision is based upon reasons that are untenable or unrea-
    sonable or if its action is clearly against justice or conscience, reason,
    and evidence.
3.  **Judges: Sentences: Due Process.** Due process requires that sentencing
    judges consider only relevant information as the basis for a sentence.
4.  **Sentences.** When imposing a sentence, a sentencing judge should con-
    sider the defendant's (1) age, (2) mentality, (3) education and experi-
    ence, (4) social and cultural background, (5) past criminal record or
    record of law-abiding conduct, and (6) motivation for the offense, as
    well as (7) the nature of the offense, and (8) the violence involved in the
    commission of the crime.
5.  **Sentences: Probation and Parole.** When deciding if it is appropriate
    to withhold a sentence of imprisonment and grant probation, a sentenc-
    ing court is guided by the statutory grounds set forth in Neb. Rev. Stat.
    § 29-2260 (Reissue 2008).
6.  ____: ____. A defendant's status as an undocumented immigrant cannot
    be the sole factor on which a court relies when determining whether to
    grant or deny probation; however, a sentencing court need not ignore a
    defendant's undocumented status.
7.  ____: ____. When deciding whether to grant probation, a defendant's
    undocumented status may properly be considered by a sentencing court
    as one of many factors so long as it is either relevant to the offense for
    which sentence is being imposed, relevant to consideration of any of

the required sentencing factors under Nebraska law, or relevant to the defendant's ability or willingness to comply with recommended probation conditions.

8. **Sentences.** The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Sarpy County: David K. Arterburn, Judge. Affirmed.

Patrick J. Boylan, Chief Deputy Sarpy County Public Defender, and Samantha D'Angelo, Senior Certified Law Student, for appellant.

Douglas J. Peterson, Attorney General, George R. Love, and Erin E. Tangeman for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, and Funke, JJ.

Stacy, J.

Jose D. Cerritos-Valdez appeals his jail sentences and contends he was denied probation based solely on his status as an undocumented immigrant. Contrary to his contention, the record shows the trial court relied on more than just his undocumented status when imposing sentence, and based its sentencing decision on relevant sentencing factors. Finding no abuse of discretion, we affirm.

## FACTS

On May 25, 2015, Cerritos-Valdez was stopped by law enforcement after the vehicle he was driving crossed over and straddled the centerline for approximately 200 feet. During the traffic stop, a small plastic baggie containing a white powdery substance was found in his wallet. Cerritos-Valdez admitted the substance was cocaine. He smelled of alcohol, admitted to the officer he had been drinking, and showed signs

of impairment on standardized field sobriety tests. Cerritos-Valdez was placed under arrest, and a subsequent breath test showed he had a breath alcohol content of .203 grams of alcohol per 210 liters of his breath.

Cerritos-Valdez was charged in a five-count information with possession of a controlled substance (a Class IV felony); driving under the influence of alcohol, .15 or over (a Class W misdemeanor); driving under suspension (a Class III misdemeanor); no proof of insurance (a Class II misdemeanor); and a traffic infraction for failure to signal a turn. Pursuant to a plea agreement, Cerritos-Valdez plead guilty to an amended information charging two misdemeanors: attempted possession of a controlled substance and driving under the influence, .15 or over.

At the sentencing hearing, the court acknowledged receiving and reviewing the presentence investigation report (PSI). Because the information in the PSI was relied upon by the court, we describe it in some detail. The PSI shows Cerritos-Valdez is not "in the United States legally" and describes him as "[u]ndocumented." According to the PSI, Cerritos-Valdez does not have a valid Social Security number or valid U.S. driver's license, and "[d]ue to [his] immigration status, he has not been able to hold a permanent job." The PSI indicates Cerritos-Valdez has been arrested previously for driving without a license and has prior convictions for driving under suspension and "Illegal Entry." With respect to the latter, the PSI states Cerritos-Valdez "was arrested in February 2013 in Laredo, Texas for Illegal Entry [and] was jailed on this charge for 15 days." Notes from the PSI interview indicate that in 2013, Cerritos-Valdez was stopped crossing into the U.S. from Mexico, spent 15 days in jail, and was "sent back to Mexico" but "came back in [the] same year" with an "illegal status."

The PSI makes no recommendation regarding sentencing, but notes Cerritos-Valdez' "legal standing here in the U.S. could be a barrier for his success if placed on probation. This

is due in main part to his lack of permanent employment." However, the PSI also states that "should the court wish to place [Cerritos-Valdez] on a term of probation," several terms and conditions would "reduce his risk of recidivism," including drug and alcohol testing, treatment and aftercare, community service, a waiverable jail sentence, and "full-time employment during the course of probation."

At the commencement of the sentencing hearing, the court asked the parties whether they had "any additions, corrections or objections" to the PSI. No objections were raised, and no corrections requested; but defense counsel provided the court with documents indicating Cerritos-Valdez had completed an alcohol education class and a victim impact panel, and the court included those documents in the PSI. The State waived the opportunity to comment on sentencing. Cerritos-Valdez requested sentences of probation.

The district court noted Cerritos-Valdez' limited criminal history, and then stated:

[H]e's not in the United States legally and that becomes problematic for the Court when probation is being requested because were he here legally, the Court might entertain probation but it's very difficult, if not impossible, for the Court to impose probation when the first term of probation is that you obey all laws; and to obey all laws, you would have to leave this country, which would then conversely make it impossible for you to be supervised by probation.

. . . [F]rankly, I wouldn't mind having some guidance on this issue from the appellate courts. I don't think we have any at this time.

But based on those factors, as well as some of the other factors that are included in the PSI, which the Court has reviewed completely, the Court finds that the Court cannot place the — should not, at least, place [Cerritos-Valdez] on probation; that a straight sentence must be imposed.

The court's written sentencing order further specifies the factors it considered and the reasons Cerritos-Valdez was found not to be an appropriate candidate for probation:

> In determining what sentence ought to be imposed, the Court has considered [Cerritos-Valdez'] age, mentality, education and experience, social and cultural background, past criminal record or record of law-abiding conduct, the motivation for the offense, as well as the nature of the offense and the amount of violence involved in the commission of the crime. The Court has considered the information presented in the [PSI] as well as any further documents presented by the parties and received by the Court for purposes of sentencing. The Court, being fully advised in the premises, finds imprisonment is necessary for the protection of the public because [Cerritos-Valdez] would likely engage in additional criminal conduct if placed on probation, and because a lesser sentence will depreciate the seriousness of the offense or promote disrespect for the law.

The court sentenced Cerritos-Valdez to 200 days in jail for the conviction of attempted possession and 30 days in jail for the conviction of driving under the influence, the jail sentences to be served consecutively. Additionally, on the conviction of driving under the influence, he was fined $500 and any driving privileges were revoked for 1 year. Cerritos-Valdez filed a timely appeal. We moved this case to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[1]

## ASSIGNMENT OF ERROR

Cerritos-Valdez assigns, restated, that it was error for the district court to deny him probation based solely on his status as an undocumented immigrant.

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

## STANDARD OF REVIEW

[1,2] Whether probation or incarceration is ordered is a choice within the discretion of the trial court, whose judgment denying probation will be upheld in the absence of an abuse of discretion.[2] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[3]

## ANALYSIS

[3] Cerritos-Valdez argues the district court erred in denying him probation based on "its erroneous interpretation that his immigration status prohibited probation." The essence of his argument is that the sentencing court relied upon an irrelevant factor—his status as an undocumented immigrant—to conclude he was an inappropriate candidate for probation. Because due process requires that sentencing judges consider only relevant information as the basis for a sentence,[4] we begin our analysis by reciting the factors a court is to consider when imposing sentence generally, and when deciding whether to withhold a sentence of incarceration specifically.[5]

[4] It has long been the rule that when imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the violence involved in the commission of the crime.[6]

---

[2] *State v. Alford*, 278 Neb. 818, 774 N.W.2d 394 (2009); *State v. Roberts*, 261 Neb. 403, 623 N.W.2d 298 (2001).

[3] *State v. Bauldwin*, 283 Neb. 678, 811 N.W.2d 267 (2012).

[4] *State v. Pattno,* 254 Neb. 733, 579 N.W.2d 503 (1998).

[5] Because all of Cerritos-Valdez' offenses occurred prior to August 30, 2015, our analysis is unaffected by 2015 Neb. Laws, L.B. 605.

[6] *State v. Wills*, 285 Neb. 260, 826 N.W.2d 581 (2013).

[5] Additionally, when deciding if it is appropriate to withhold a sentence of imprisonment and grant probation, a sentencing court is guided by the statutory grounds set forth in Neb. Rev. Stat. § 29-2260 (Reissue 2008):

(3) The following grounds, while not controlling the discretion of the court, shall be accorded weight in favor of withholding sentence of imprisonment:

(a) The crime neither caused nor threatened serious harm;

(b) The offender did not contemplate that his or her crime would cause or threaten serious harm;

(c) The offender acted under strong provocation;

(d) Substantial grounds were present tending to excuse or justify the crime, though failing to establish a defense;

(e) The victim of the crime induced or facilitated commission of the crime;

(f) The offender has compensated or will compensate the victim of his or her crime for the damage or injury the victim sustained;

(g) The offender has no history of prior delinquency or criminal activity and has led a law-abiding life for a substantial period of time before the commission of the crime;

(h) The crime was the result of circumstances unlikely to recur;

(i) The character and attitudes of the offender indicate that he or she is unlikely to commit another crime;

(j) The offender is likely to respond affirmatively to probationary treatment; and

(k) Imprisonment of the offender would entail excessive hardship to his or her dependents.

Section 29-2260(2) further provides that sentencing courts may withhold imprisonment and impose probation

unless, having regard for the nature and circumstances of the crime and the history, character, and condition of the offender, the court finds that imprisonment of

the offender is necessary for protection of the pub-
lic because:

(a) The risk is substantial that during the period of
probation the offender will engage in additional crimi-
nal conduct;

(b) The offender is in need of correctional treatment
that can be provided most effectively by commitment to a
correctional facility; or

(c) A lesser sentence would depreciate the seriousness
of the offender's crime or promote disrespect for law.

This case presents the narrow question of whether a defend-
ant's undocumented status is a relevant consideration when
determining whether to grant or deny probation. We have not
previously considered this question, but other courts have.

While the law in this area is not well settled, a consensus
has developed that it is impermissible for a sentencing court
to deny probation based solely on a defendant's undocumented
status.[7] Beyond that broad proposition, courts differ on when,
or for what purpose, a sentencing judge may properly consider
a defendant's undocumented status when deciding whether to
impose probation.[8]

Generally, in discussing whether it was proper to consider
a defendant's undocumented status in connection with decid-
ing whether to impose a sentence of probation, other courts
have focused on whether the defendant's status implicated
other relevant sentencing considerations. For instance, some
courts have held it is appropriate to consider the effect of
a defendant's undocumented status on his or her ability or

---

[7] See, *People v. Cesar*, 131 A.D.3d 223, 14 N.Y.S.3d 100 (2015); *Trujillo
v. State*, 304 Ga. App. 849, 698 S.E.2d 350 (2010); *People v. Hernandez-
Clavel*, 186 P.3d 96 (Colo. App. 2008); *State v. Martinez*, 38 Kan. App. 2d
324, 165 P.3d 1050 (2007); *People v. Cisneros*, 84 Cal. App. 4th 352, 100
Cal. Rptr. 2d 784 (2000); *State v. Morales-Aguilar*, 121 Or. App. 456, 855
P.2d 646 (1993).

[8] See *id.*

willingness to comply with conditions of probation.[9] Other courts have reasoned that a defendant's undocumented status or a history of repeated illegal reentry into the U.S. may demonstrate an "unwillingness to conform his or her conduct to the conditions of probation" or show that a probation sentence would not "be at all effective" for that defendant.[10] Still others have held that the undocumented status of defendants may be considered as it relates to their criminal history.[11] At least one court has noted that a defendant's undocumented status is properly considered as it relates to the defendant's employment history or legal employability.[12] And we note that in some instances, defendants have specifically asked the sentencing court to consider their undocumented status, arguing it would be error not to consider it.[13]

[6,7] Based on the foregoing, we agree that a defendant's status as an undocumented immigrant cannot be the sole factor on which a court relies when determining whether to grant or deny probation[14]; however, a sentencing court need not ignore a defendant's undocumented status.[15] When deciding whether to grant probation, a defendant's undocumented status may properly be considered by a sentencing court as one of many factors so long as it is either relevant to the offense for which sentence is being imposed,[16] relevant to consideration of any of the required sentencing

---

[9] See, *Trujillo, supra* note 7; *Hernandez-Clavel, supra* note 7; *State v. Zavala-Ramos*, 116 Or. App. 220, 840 P.2d 1314 (1992); *People v. Sanchez*, 190 Cal. App. 3d 224, 235 Cal. Rptr. 264 (1987).

[10] *Hernandez-Clavel, supra* note 7, 186 P.3d at 99-100. Accord *Morales-Aguilar, supra* note 7.

[11] *Yemson v. U.S.*, 764 A.2d 816 (D.C. 2001); *Zavala-Ramos, supra* note 9.

[12] *Cesar, supra* note 7.

[13] See *U.S. v. Meza-Lopez*, 808 F.3d 743 (8th Cir. 2015).

[14] See cases cited *supra* note 7.

[15] See, *Yemson, supra* note 11; *Zavala-Ramos, supra* note 9.

[16] See, e.g., *State v. Gayton*, 370 Wis. 2d 264, 882 N.W.2d 459 (2016).

factors under Nebraska law, or relevant to the defendant's ability or willingness to comply with recommended probation conditions.[17]

Here, Cerritos-Valdez argues that the sole reason the district court denied him probation was his immigration status. Our review of the record shows the court relied on more than just his undocumented status when imposing sentence.

In both open court and in its written sentencing order, the court stated it had considered Cerritos-Valdez' age, mentality, education and experience, social and cultural background, past criminal record or record of law-abiding conduct, the motivation for the offenses, as well as the nature of the offenses and the amount of violence involved in the commission of the crimes. The court expressly stated it had considered the information presented in the PSI, much of which was directly relevant to these factors. We conclude the court's sentencing comments, considered collectively, show the court did not rely solely on Cerritos-Valdez' undocumented status in deciding not to impose probation.

Cerritos-Valdez also argues that the court's remarks during sentencing suggest it was under the mistaken impression that it could not grant probation due to his immigration status. The record refutes this argument. When explaining its sentencing decision, it is true the court initially remarked it "cannot" place Cerritos-Valdez on probation, but it promptly clarified that it "should not, at least" place him on probation. Nothing else in the record suggests the court was operating under the mistaken belief that a defendant's undocumented status prohibits a court from imposing a sentence of probation. During the plea hearing, the court talked with Cerritos-Valdez about the possibility of probationary sentences. The PSI suggested probation conditions for Cerritos-Valdez in the event the court determined he was an appropriate candidate

[17] See, *Trujillo, supra* note 7; *Hernandez-Clavel, supra* note 7; *Morales-Aguilar, supra* note 7; *Zavala-Ramos, supra* note 9; *Sanchez, supra* note 9.

for probation. And the court's remarks during sentencing, as well as the language of its sentencing order, both demonstrate it considered probation but found Cerritos-Valdez to be an inappropriate candidate.

[8] The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[18] Here, the district court expressed concern that due to Cerritos-Valdez' undocumented status, it would be difficult for him to comply with the standard terms of probation. Generally speaking, this is an appropriate sentencing consideration; it was a concern shared by the probation officer who completed the PSI, and it was one which was supported by the information contained in the PSI.

We find no abuse of discretion in the court's decision not to place Cerritos-Valdez on probation for his convictions of attempted possession of a controlled substance and driving under the influence, .15 or over. Drunk driving is a serious crime that threatens public safety, and when Cerritos-Valdez was arrested, he was not only operating a motor vehicle with an alcohol level more than twice the legal limit, but he was also driving without a license, a crime for which he had been arrested just a few months earlier. The PSI showed Cerritos-Valdez had been jailed for illegally entering the United States, was returned to Mexico, and now was back in the United States again without documentation. The PSI further showed it is difficult for Cerritos-Valdez to maintain permanent employment in Nebraska because his immigration status prevents him from working legally. These factors are related to his undocumented status, but also are relevant to the sentencing factors the district court was required to consider when deciding whether to impose sentences of probation.

---

[18] *State v. Raatz*, 294 Neb. 852, 885 N.W.2d 38 (2016). See, *Bauldwin, supra* note 3; *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011).

Given all the facts and circumstances surrounding Cerritos-Valdez' life, and considering the nature and circumstances of the crimes for which he was sentenced, we find no abuse of discretion in the sentences imposed. The district court did not abuse its discretion in finding that if Cerritos-Valdez were placed on probation, the risk was substantial that he would engage in additional criminal conduct or that jail sentences were appropriate because lesser sentences would depreciate the seriousness of the crimes and promote disrespect for the law.

## CONCLUSION

Finding no abuse of discretion on the record before us, we affirm the judgment of the district court.

AFFIRMED.

KELCH, J., not participating.