### A10A0338. TRUJILLO v. THE STATE.
#### (698 SE2d 350)

BERNES, Judge.

Following a bench trial, Elijio Trujillo was convicted of burglary and sentenced to three years imprisonment. He argues on appeal that the evidence was insufficient to support his conviction. He further argues that the trial court imposed an unlawful sentence upon him in violation of his constitutional rights to due process and equal protection. We find no error and affirm.

On appeal from a bench trial resulting in a criminal conviction, we view all evidence in the light most favorable to the trial court's verdict, and the defendant no longer enjoys the presumption of innocence. *Head v. State*, 303 Ga. App. 475 (693 SE2d 845) (2010); *Smith v. State*, 291 Ga. App. 725, 726 (662 SE2d 817) (2008). "We do not . . . re-weigh testimony, determine witness credibility, or address assertions of conflicting evidence; our role is to determine whether the evidence presented is sufficient for a rational trier of fact to find guilt beyond a reasonable doubt." *Hall v. State*, 294 Ga. App. 274, 275 (668 SE2d 880) (2008).

So viewed, the evidence adduced during the bench trial showed that Trujillo was accused of burglarizing a residence owned by a mother and daughter. During the early morning hours on the night in question, the daughter and her boyfriend were asleep in a basement bedroom when they were awakened by noises outside their bedroom door. They then observed Trujillo crouched down behind several boxes containing their valuables in the common area of the basement. Believing Trujillo was unaware that he had been detected, the daughter and her boyfriend went upstairs, locking the basement door behind them, and called 911.

Law enforcement officers arrived a short time later and apprehended Trujillo, who was still in the basement. They found him to be in possession of the mother's panties, garter belt, and stockings, which he had apparently taken from one of the boxes. When the mother approached the arresting officer to provide her identification as requested, Trujillo stated, "[s]orry, lady."

Trujillo testified on his own behalf. Both he and his cousin lived in the same subdivision as the residence in which he was found. He testified that he had consumed 18 beers on the night in question and, although he had no memory of the events or his subsequent arrest, he believed that he was trying to go to his cousin's house and had gotten lost in his drunken stupor.

1. The evidence set forth above was sufficient to sustain Trujillo's conviction of burglary. See OCGA § 16-7-1 (a). As alleged, the state had the burden of proving that Trujillo, without authority and with the intent to commit a theft therein, entered or remained within the dwelling house of another. Id. The state established that Trujillo had entered into and remained within the subject residence during the early morning hours without authority and, after he was apprehended, had the resident's belongings on his person. This evidence supported the trial court's finding of guilt beyond a reasonable doubt. See OCGA § 16-7-1 (a); *In the Interest of J. B. M.*, 294 Ga. App. 545, 546-547 (1) (669 SE2d 523) (2008); *Minor v. State*, 278 Ga. App. 327, 328-329 (629 SE2d 44) (2006); *Grice v. State*, 166 Ga. App. 706, 706-707 (1) (305 SE2d 438) (1983).

Trujillo nonetheless argues that the state failed to prove that he entered into the residence with the intent to commit a theft therein. Specifically, Trujillo contends that the evidence against him was circumstantial and that the state failed to exclude other reasonable hypotheses, such as him having entered the home "to get out of the cold," "to sleep," or simply by error.

First, we note that this is not a circumstantial evidence case. But, to the extent that the state used circumstantial evidence to establish Trujillo's intent, his argument nonetheless fails. "As a general rule the state must, of necessity, rely on circumstantial evidence in proving intent." *Nelson v. State*, 277 Ga. App. 92, 95 (1) (a) (625 SE2d 465) (2005). The question as to whether a defendant entertained an intent to commit a theft after unlawfully entering into the residence of another is an issue to be resolved by the factfinder. Id.; *Minor*, 278 Ga. App. at 329. And, "[w]hen the trial court is authorized to find the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis except the defendant's guilt, the verdict will not be disturbed unless the verdict is insupportable as a matter of law." (Citation omitted.) *Hall*, 294 Ga. App. at 275.

Here, the circumstances under which Trujillo was found in the subject residence support the trial court's determination that he entered with the intent to commit a theft. See *Studiemeyer v. State*, 278 Ga. App. 756, 756-757 (1) (629 SE2d 593) (2006) ("[A]n intent to steal may be inferred when the evidence shows an unlawful entry into the building of another where valuable goods are stored or kept inside.") (citations and punctuation omitted); *Hall*, 294 Ga. App. at 275 (burglary conviction based upon theft of $24); *Grice*, 166 Ga. App. at 706-707 (finding intent to commit theft even though defendant had not taken anything from the residence after his unlawful entry). Despite Trujillo's contention, the trial court's pronouncements during sentencing did not indicate the trial court's belief that the state failed to prove Trujillo's intent; to the contrary, when read in context it is clear that the trial court, although questioning whether Trujillo had ill intent beyond that of mere theft, ultimately rejected every other hypothesis and concluded that the evidence proved Trujillo's intent to commit theft beyond a reasonable doubt.[1]

Nor does Trujillo's alleged confusion due to voluntary intoxication absolve him of criminal liability for his conduct. See *Sermons v. State*, 294 Ga. App. 293, 295 (669 SE2d 210) (2008). Although it is possible that "the influence of alcohol on a person's mind [can render him] so impaired that he is incapable of forming an intent to commit an act or understand the consequences of such an act," Trujillo's apology to the mother as he was being placed under arrest lends support to the trial court's conclusion that Trujillo was not so impaired that he was incapable of forming the requisite intent or understanding the consequences of his actions. *Smith v. State*, 181 Ga. App. 595, 596-597 (353 SE2d 35) (1987).

2. Trujillo next argues that the sentence of the trial court violated his constitutional right to due process and equal protection under the law. Specifically, Trujillo contends that the trial court impermissibly based its decision to deny him probation solely on his status as an illegal alien.

It is undisputed that Trujillo is in the United States illegally. During the sentencing hearing, Trujillo's trial counsel argued that probation was the appropriate sentence given Trujillo's lack of

---

[1] During sentencing, the trial court stated:

I have no idea what [Trujillo] was doing in there. But the [s]tate's evidence shows that he was taking things and putting them in his pockets. He entered, certainly, and he remained within. And I think the evidence shows — it doesn't show any other intent other than to take or steal something. Now, . . . you could argue that he had no intent, but . . . the short answer is, I think there's more than enough evidence. . . . In this case[,] we don't know what his intent is. But for all intents and purposes, the best evidence of his intent . . . was . . . that he was stealing stuff[.]

criminal history. The trial court expressed great concern that he could not order Trujillo, an illegal alien, to obtain suitable employment — a standard condition of probation — without ordering him to violate the law and/or be an accessory to any employer who would hire him in violation of the law. Trujillo's trial counsel then proposed that the trial court waive the specific requirements that Trujillo work and pay a fine as a condition of probation, and instead require him to contribute significant community service hours. To this end, Trujillo introduced testimony that he had friends and family who would be willing to help him meet his financial obligations while on probation.

After devoting a significant amount of time and consideration to the issue, the trial court responded:

> [T]he irony here of what you're requesting is that . . . not only would I give [Trujillo] . . . a probated or suspended sentence, but I would take away the requirement that he work and take away the requirement that he pay a fine. Because certainly, if he doesn't work, he can't pay a fine. I wouldn't do that for any able-body person who is convicted of burglary that I can think of. . . . Secondly, if I did that, then he would have idle time. I don't relish the idea of slave labor as you have suggested: [m]onumental community service work hours with no ability to support himself or his family. . . . I cannot impose a sentence that contemplates the contribution even of family members, let alone people that aren't related to him, that might have [been] promised, and I have received no such promises. . . . I just don't know of any way for the [c]ourt to rely on [third-party assurances] and make it work, nor enter a sentence in reliance thereon, because everything that we're saying here, even with promises, can be reneged on, and the [c]ourt could not revoke [Trujillo's probation] because impossibility would be a defense.

The trial court thereafter sentenced Trujillo to three years to serve and waived the payment of any fees.

Georgia courts are vested with broad discretion when determining the appropriate sentence to impose upon a criminal defendant, and it is the duty of the trial court to exercise that discretion as to all aspects of the sentence that it imposes. See OCGA §§ 17-10-1 (a) (1), 42-8-34 (c); *Jefferson v. State*, 209 Ga. App. 859, 863 (3) (434 SE2d 814) (1993). That discretion must nonetheless be exercised within the perimeters of the Fourteenth Amendment, which protects all "persons" — including those residing in this country illegally —

from invidious governmental discrimination based solely upon their immigration status. See, e.g., *Pyler v. Doe*, 457 U. S. 202, 210 (II) (102 SC 2382, 72 LE2d 786) (1982) ("Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments.") (citations omitted); *Barge-Wagener Constr. Co. v. Morales*, 263 Ga. 190, 192 (2) (429 SE2d 671) (1993) ("Resident aliens are entitled to important constitutional rights guaranteed under the equal protection and due process clauses."). And certainly, sentencing laws must not be applied "with an evil eye and an unequal hand, so as . . . to make unjust and illegal discriminations between persons in similar circumstances" based upon their national origin. *Yick Wo v. Hopkins*, 118 U. S. 356, 373-374 (6 SC 1064, 30 LE 220) (1886). See *McLaughlin v. Florida*, 379 U. S. 184, 191-192 (I) (85 SC 283, 13 LE2d 222) (1964).

When determining the appropriate sentence to impose, a trial court is authorized, in its discretion, to probate a portion of a defendant's sentence if the trial court concludes "that the defendant is not likely to engage in a criminal course of conduct and that the ends of justice and the welfare of society do not require that the defendant" serve the duration of his or her sentence in incarceration. OCGA § 42-8-34 (c). Standard conditions of probation include requirements that the probationer "[w]ork faithfully at suitable employment," "[v]iolate no local, state, or federal laws," and "be of general good behavior," and the probationer is subject to having his or her probation revoked in the event of a violation of any of the imposed conditions. OCGA §§ 42-8-34.1 (e); 42-8-35 (a) (5), (11). It follows that a trial court's decision to exercise its discretion in granting probation naturally includes an assessment of the likelihood that the defendant will have the ability to successfully comply with the imposed conditions of probation. See OCGA § 42-8-34 (c).

With these principles in mind, we conclude that the trial court did not violate Trujillo's constitutional rights by considering his illegal alien status a relevant factor in formulating an appropriate sentence. See, e.g., *United States v. Gomez*, 797 F2d 417, 419 (7th Cir. 1986) (noting that a sentencing judge need not "shut his eyes to the reality of the factual situation before him and pretend that the defendant is not an illegal alien"); *People v. Sanchez*, 190 Cal.App.3d 224, 231 (I) (5) (1987) (sentencing court may consider fact of immigration status among all other relevant factors); *People v. Hernandez-Clavel*, 186 P3d 96, 99 (II) (Colo. App. 2008) ("[T]he surrounding circumstances of a defendant's alien status may be relevant to a sentencing court's decision whether to grant or deny probation."); *Yemson v. United States*, 764 A2d 816, 819 (II) (D. C. 2001) ("[A] sentencing court, in deciding what sentence to impose, [need not] close its eyes to the defendant's status as an illegal alien

and his history of violating the law, including any law related to immigration."). Cf. *Sanchez v. State*, 891 NE2d 174 (Ind. App. 2008) (court properly considered defendant's immigration status as an aggravating factor in sentencing); *State v. Svay*, 828 A2d 790, 794-795 (Me. 2003) (noting that defendant's status as an illegal immigrant and the fact that he could be deported as a result of the sentence imposed were legitimate factors to be considered by the trial court during sentencing); *State v. Zavala-Ramos*, 840 P2d 1314, 1316 (Or. App. 1992) (trial court was entitled to consider defendant's pattern of illegally entering the United States as an aggravating factor in determining whether a probationary sentence would serve the purposes of protecting the public and punishing the offender). Indeed, the trial court would have been remiss had it ignored the practical realities presented by Trujillo's immigration status and the obstacles that it would have presented to Trujillo's ability to comply with the imposed conditions of probation. And, since the sentence otherwise fell within the statutorily authorized range, Trujillo offers no ground for reversal. See OCGA § 16-7-1 (a) (sentencing range for a first burglary offense is not less than one nor more than twenty years); *Raszeja v. State*, 298 Ga. App. 713, 716 (4) (680 SE2d 690) (2009) ("[T]his [C]ourt will not disturb a sentence within the statutory limits.") (punctuation and footnote omitted); *Bennett v. State*, 292 Ga. App. 382, 385 (1) (665 SE2d 365) (2008).

3. Trujillo next argues that the trial court "failed to exercise its discretion in sentencing [him] because it only considered whether or not to use its inflexible rule to withhold probation to illegal aliens." See *Cottingham v. State*, 206 Ga. App. 197, 199 (3) (424 SE2d 794) (1992) ("Because of the broad discretion in sentencing vested in trial courts, it is the duty of the courts to exercise that discretion as to all aspects of sentences they impose."). Contrary to Trujillo's assertion, however, a review of the transcript reveals that the trial court went to great lengths to consider all available options prior to issuing its sentence. Compare *Wnek v. State*, 262 Ga. App. 733, 733-735 (586 SE2d 428) (2003) (trial court erred in adhering to an inflexible rule pursuant to which it denied first offender treatment to all criminal defendants who exercised his or her right to trial). The trial court articulated its discontentment regarding Trujillo's inability to comply with the conditions of probation and invited Trujillo's counsel to offer viable solutions that addressed its concerns. And although the trial court ultimately expressed that it felt "hamstrung" by the circumstances presented so as to preclude it from offering Trujillo a probated sentence, it also made clear that it had considered — and rejected — the option of waiving those conditions with which Trujillo could not comply. The allegation that the trial court failed to exercise its discretion lacks merit.

4. Finally, Trujillo contends that the trial court based its refusal to probate any portion of his sentence upon the inaccurate assumption that Trujillo could not obtain lawful employment as a result of his illegal alien status. After conceding the point during the sentencing hearing and failing to make the argument in his motion for new trial, however, Trujillo cannot now be heard to argue that the assumption that Trujillo could not obtain legal employment was incorrect. See generally *Smith v. State*, 302 Ga. App. 128, 132 (1) (b) (690 SE2d 449) (2010); *Giles v. State*, 284 Ga. App. 1, 5 (2) (642 SE2d 921) (2007); *Jones v. State*, 272 Ga. App. 563, 564 (2) (a) (612 SE2d 852) (2005).

*Judgment affirmed. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED JULY 7, 2010.

*Kevin J. Wilson*, for appellant.

*Garry T. Moss, District Attorney, Katherine I. Terry, Assistant District Attorney*, for appellee.