NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: February 20, 2024

S23A1135.  REYES v. THE STATE.

COLVIN, Justice.

Appellant Jamie Avila Reyes appeals his sentence of 15 years to serve for homicide by vehicle in the first degree, driving under the influence of alcohol (less safe), and other crimes related to the death of Courtney Zajdowicz.[1] Appellant contends that the trial court

---

[1] The crimes occurred on September 1, 2021. On September 3, 2021, Appellant was arrested pursuant to an arrest warrant. On December 6, 2021, the federal government began removal proceedings against Appellant to return him to his native country of Mexico. On December 8, 2021, a Rabun County grand jury returned an 11-count indictment charging Appellant with three counts of homicide by vehicle in the first degree (Counts 1-3), two counts of driving under the influence (Counts 4-5), reckless driving (Count 6) driving on wrong side of roadway (Count 7), failure to maintain lane (Count 8), driving without a license (Count 9), no proof of insurance (Count 10), and open container (Count 11).

On May 25, 2022, Appellant entered a non-negotiated guilty plea to homicide by vehicle in the first degree (Count 1), driving under the influence of alcohol, less safe (Count 4), reckless driving (Count 6), and driving without a license (Count 9). Pursuant to a motion from the State, the trial court entered an order of nolle prosequi on the remaining counts. The trial court sentenced Appellant to 15 years in prison, with 15 years to serve, for Count 1; 12 months

improperly considered his status as an undocumented immigrant during sentencing, in violation of his rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution. Appellant further argues that OCGA § 17-10-1.3, which allows a trial court to consider whether a criminal defendant is subject to deportation when determining whether to probate the defendant's sentence, is unconstitutional both as-applied and on its face. Because OCGA § 17-10-1.3 survives rational basis review, and because the trial court applied this statute within the bounds of the protections offered by the Due Process and Equal Protection Clauses of the United States Constitution, Appellant's claims fail.

1. The facts in this case are uncontested. On September 1,

---

each for reckless driving (Count 6) and driving without a license (Count 9), to run concurrent with Count 1. Lastly, it merged Appellant's driving under the influence (less safe) conviction (Count 4) into Count 1 for sentencing purposes.

On June 23, 2022, Appellant appealed his sentence to the Court of Appeals on constitutional grounds. On March 30, 2023, the Court of Appeals remanded his case to the trial court for a ruling on Appellant's constitutional claims in the first instance. The parties briefed these issues for the trial court, which conducted a hearing on May 17, 2023, and issued an order denying Appellant's claims on June 26, 2023. Following the denial of his claims by the trial court, Appellant filed a timely notice of appeal to this Court. The case was docketed to the Court's December 2023 term and submitted for a decision on the briefs.

2021, Appellant was traveling northbound on Georgia Highway 15 when he lost control of his vehicle, crossed over the center lane, and struck Zajdowicz's vehicle head-on as she drove south. According to a toxicology report performed after the collision, Appellant's blood alcohol content ("BAC") was .18 percent — more than double the legal limit of .08 percent.[2] See OCGA § 40-6-391 (a) (5). Data retrieved from Appellant's vehicle showed that he was traveling 63 miles per hour when he struck Zajdowicz's vehicle and that he did not engage his brakes prior to the collision. By contrast, Zajdowicz was traveling at 50 miles per hour but braked to 37 miles per hour before impact. Zajdowicz was transported to Rabun County Hospital, where she died from her injuries. According to law enforcement officers who arrived at the scene, Appellant smelled of alcohol, and there were empty beer cans on the floorboard of his pickup truck. Appellant was transported to Northeast Georgia Medical Center, where he was treated until his arrest.

---

[2] It is unclear from the record whether Appellant's BAC was .18 percent at the time the toxicology exam was performed or whether his BAC was estimated to be .18 percent at the time of the accident.

Shortly after Appellant's arrest, U.S. Immigration and Customs Enforcement, Department of Homeland Security ("ICE") placed a hold on Appellant with the Rabun County Detention Center, and on December 6, 2021, the United States initiated removal proceedings against Appellant.

On May 25, 2023, Appellant entered a non-negotiated guilty plea, and the trial court conducted a sentencing hearing. The State proffered the above-stated facts related to the collision, which were uncontested, and recited Appellant's history of previous traffic violations. Though Appellant's maximum possible sentence for his offenses was 17 years in prison, the State requested a total sentence of 15 to serve. Appellant, through counsel, asked for a sentence of five years to serve. Appellant's counsel conceded for purposes of his criminal proceedings that Appellant was unlawfully present in the country but explained that Appellant was a father and a small business owner with ties to the community lasting approximately 30 years. Appellant's counsel further explained that following the "conclusion of his custodial sentence in this case, [Appellant] will be

4

deported from the United States, [and] permanently barred from returning."

After hearing victim impact statements from Zajdowicz's mother and father, the Court pronounced Appellant's sentence as follows:

> THE COURT: Normally, in a case of this nature, we start looking at the maximum. And [where] there's been life taken, we almost always start looking in that direction. And, of course, we start taking into account any evidence of mediation or any type of actions or lack of actions by the defendant that would have an impact on that.
>
> Here, the defendant's willingness to accept responsibility certainly weighs on the Court's mind and is something the Court takes into consideration. But there is also something different in this case that I want to explain why it does not have the normal, usual impact. I am just giving you an example here. This is not a particular case, but I have had several of these cases, unfortunately, where a life has been taken by the driver who was under the influence of either alcohol or drugs. So that record is out there in this court as it is in Stephens County, Habersham County, and probably every court in this state, unfortunately, has to deal with these matters.
>
> But whenever a defendant is willing to accept responsibility, come forward . . . or causes a family not to have to go through the rigors of a trial and all that involves, that is certainly, again, something I take into consideration. But here, we have a situation with

5

[Appellant] if he does not serve the time in the State's penitentiary, then it's been acknowledged by both sides that I.C.E. is going to remove him from this country. . . .

The problem with that, I don't know what happens when he is removed. And I don't know if [Appellant] is originally from Mexico. I am going to assume that. I don't know his country of origin. But let's just say that he is removed back to Mexico. I have no control over what happens in Mexico if he is taken back to Mexico and released and lives a free life. That is not justice to me. . . .

So I do know, though, in this state when I pronounce a sentence . . . what happens then, and I have control to some degree over that even though the Department of Corrections has a parole board that makes decisions without or beyond this Court's jurisdiction.

The trial court then sentenced Appellant to 15 years to serve, for Count 1 (homicide by vehicle), merged Count 4 (driving under the influence) into Count 1 for sentencing purposes, and issued concurrent sentences of 12 months each for Count 6 (reckless driving) and Count 9 (driving without a license), in accordance with the State's recommendation. Appellant objected on "equal protection grounds," and on other constitutional grounds not relevant to his

6

appeal, but he did not object under the Due Process Clause.[3] The trial court noted Appellant's objection but did not explicitly rule on it at that time. Neither the parties nor the trial court explicitly referenced OCGA § 17-10-1.3 during the sentencing hearing or in any written filings submitted at or prior to sentencing.

Appellant then appealed his sentence to the Court of Appeals, where he argued that his sentence violated both the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment. Because the trial court had not ruled on Appellant's objection, the Court of Appeals remanded "for the trial court to rule upon [Appellant's] challenge to his sentence on constitutional grounds," without distinguishing between his due process and his equal protection claims. Following remand, Appellant briefed both constitutional claims for the trial court and argued, for the first time, that to the extent the trial court relied on OCGA § 17-10-1.3 in

---

[3] The State does not argue that Appellant waived his federal due process claim regarding his sentence. Because we conclude that Appellant's due process challenge to his sentence fails, see *infra* Division 3, we do not decide whether it was properly preserved for review.

7

issuing its sentence, that statute is unconstitutional on its face and as applied to him.[4] Following additional briefing from the State and a hearing, the trial court issued a written order denying Appellant's claims.

In its written order, the trial court found that "[Appellant] is an illegal alien [and] [he] would be unlikely to serve any probated part of his sentence, because [he] will most likely be deported upon his release from custody." The trial court explained that it declined to probate any portion of Appellant's sentence "[t]o ensure [Appellant] served his entire sentence" and that "it did not sentence Defendant on the basis of his country of origin." In concluding that Appellant's sentence was constitutional, the trial court relied on *Trujillo v. State*, 304 Ga. App. 849 (698 SE2d 350) (2010), which involved a similar due process and equal protection challenge from an undocumented immigrant. In *Trujillo*, the Court of Appeals held

---

[4] The State does not argue that Appellant waived his constitutional claims regarding OCGA § 17-10-1.3. As with Appellant's federal due process challenge to his sentence, we decline to consider whether Appellant's constitutional claims regarding OCGA § 17-10-1.3 were preserved for review because we conclude that those claims fail on the merits. See *infra* Division 2.

8

that a trial court could consider an undocumented immigrant's ability "to successfully comply with the imposed conditions of probation," such as the requirement to maintain suitable employment, when determining whether to probate a portion of the defendant's sentence. Id. at 853 (2). Though the *Trujillo* decision did not address the constitutionality of OCGA § 17-10-1.3, the trial court relied on *Trujillo's* reasoning to conclude that the statute is "constitutional on its face and as applied in this case." Appellant now appeals his sentence and the trial court's ruling on the constitutionality of OCGA § 17-10-1.3.

2. (a) Because the trial court closely tracked the procedure set forth in OCGA § 17-10-1.3, we turn first to Appellant's facial challenge to that statute. As explained below, we conclude that Appellant's claim fails.

OCGA § 17-10-1.3 permits trial courts to consider whether the "person to be sentenced is lawfully present in the United States under federal law," and further, whether such person "would be legally subject to deportation from the United States while serving

a probated sentence." OCGA § 17-10-1.3 (a), (b). If so, the trial court may, "[w]here appropriate, decline to probate [the person's] sentence in furtherance of the state interest in certain and complete execution of sentences." OCGA § 17-10-1.3 (c) (3).[5] Appellant argues that this

---

[5] OCGA § 17-10-1.3 provides in full that

(a) In determining whether to probate all or any part of any sentence of confinement in any felony, misdemeanor, or ordinance violation case, the sentencing court shall be authorized to make inquiry into whether the person to be sentenced is lawfully present in the United States under federal law.

(b) If the court determines that the person to be sentenced is not lawfully present in the United States, the court shall be authorized to make inquiry into whether the person to be sentenced would be legally subject to deportation from the United States while serving a probated sentence.

(c) If the court determines that the person to be sentenced would be legally subject to deportation from the United States while serving a probated sentence, the court may:

(1) Consider the interest of the state in securing certain and complete execution of its judicial sentences in criminal and quasi-criminal cases;

(2) Consider the likelihood that deportation may

10

statute violates the Equal Protection Clause because it treats undocumented immigrants differently than persons lawfully present in the country and that it violates the Due Process Clause because consideration of a defendant's immigration status at sentencing is constitutionally impermissible. In making these arguments, Appellant contends that undocumented immigrants constitute a suspect class and therefore that OCGA § 17-10-1.3 is subject to strict scrutiny. Appellant further argues that OCGA § 17-10-1.3 fails to satisfy this level of review because the State's interest "in securing certain and complete execution of its judicial sentences in criminal and quasi-criminal cases" is not a compelling one. As

intervene to frustrate that state interest if probation is granted; and

(3) Where appropriate, decline to probate a sentence in furtherance of the state interest in certain and complete execution of sentences.

(d) This Code section shall apply with respect to a judicial determination as to whether to suspend all or any part of a sentence of confinement in the same manner as this Code section applies to determinations with respect to probation.

11

explained below, however, Appellant is incorrect: undocumented immigrants do not form a suspect class, and OCGA § 17-10-1.3 is therefore subject only to rational-basis review, which it satisfies.

(i) We begin by noting that the Due Process and Equal Protection Clauses of the Fourteenth Amendment protect all "persons" within the United States regardless of whether their presence in the country is lawful. See *Zadvydas v. Davis*, 533 U.S. 678, 693 (III) (A) (121 SCt 2491, 150 LE2d 653) (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Plyler v. Doe*, 457 U.S. 202, 210-212 (II) (102 SCt 2382, 72 LE2d 786) (1982) (holding that the Due Process and Equal Protection Clauses protect "aliens whose presence in this country is unlawful"). Appellant is therefore among the persons protected by the Due Process and Equal Protection Clauses.

When a claimant brings an equal protection or due process challenge to a governmental action or to a statute, we apply rational basis scrutiny unless the claimant is a member of a suspect class or

12

a fundamental right is at stake. See *State v. Holland*, 308 Ga. 412, 414 (1) (841 SE2d 723) (2020) (applying rational basis scrutiny to the appellant's federal and state due process and equal protection challenges to the homicide-by-vehicle statute); *Favorito v. Handel*, 285 Ga. 795, 796, 798 (1) (684 SE2d 257) (2009) (applying rational basis scrutiny to the appellant's federal and state equal protection challenge and his federal due process challenge to a governmental action).

Appellant relies on *Graham v. Richardson*, 403 U.S. 365 (91 SCt 1848, 29 LE2d 534) (1971) to support his claim that undocumented immigrants are a suspect class. See *Graham*, 403 U.S. at 372 (II) ("[C]lassifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny," and "[a]liens as a class are a prime example of a 'discrete and insular' minority from whom such heightened judicial solicitude is appropriate."). *Graham* is inapplicable, however, because it concerned challenges to state welfare laws that discriminated against noncitizens who were *lawfully* present in the

country. See id. 367-368 (I). In *Plyler v. Doe*, the Supreme Court considered for the first time what level of scrutiny to apply to state statutes that concern persons *unlawfully* present in the United States. See *Plyler*, 457 U.S. at 223 (III) (B). There, the Court stated that "[u]ndocumented aliens cannot be treated as a suspect class because their presence in this country in violation of federal law is not a 'constitutional irrelevancy.'" Id.[6] Decades later, this Court cited *Plyler* when applying rational basis scrutiny to an unlawfully-present person's due process and equal protection challenges to a Georgia statute. See *Castillo-Solis v. State*, 292 Ga. 755, 761 (3) (740 SE2d 583) (2013) ("[I]llegal immigrants have never been recognized as a suspect class in constitutional analysis." (citing *Plyler*, 457 U.S. at 223 (III) (B))).[7] In light of these cases, we hold Appellant is not a

---

[6] Though *Plyler* involved neither a suspect class nor a fundamental right, the Supreme Court nevertheless applied a heightened level of scrutiny because the statute at issue deprived children of undocumented noncitizens of an education and thereby "impose[d] a lifetime hardship on a discrete class of children not accountable for their disabling status." *Plyler*, 457 at 223 (III) (B).

[7] Our past application of rational basis scrutiny in this context accords with the Eleventh Circuit Court of Appeals' treatment of the same federal constitutional issue: in *Estrada v. Becker*, 917 F3d 1298 (11th Cir. 2019), that court applied rational basis review after carefully considering the level of

member of a suspect class, and we accordingly apply rational basis scrutiny to his constitutional claims.

(ii) To satisfy rational basis review in this context, Appellant must establish that the classification scheme employed by the statute bears no "rational relationship to a legitimate government interest." *Castillo-Solis*, 292 Ga. at 761 (3). "Because legislation is presumptively constitutional, the claimant carries the burden of proving that a statute is unconstitutional." *Regan v. State*, 317 Ga. 612, 616 (3) (b) (894 SE2d 584) (2023).

As previously explained, OCGA § 17-10-1.3 (c) authorizes a trial court to decline to probate a defendant's sentence where the defendant "would be legally subject to deportation from the United States while serving a probated sentence" as a result of the defendant's unlawful presence in the United States. This classification scheme divides persons to be sentenced based on whether they are legally subject to deportation, rather than on their

scrutiny to apply to a Florida policy that required its elective colleges and universities to verify the lawful presence of admitted students. See *Estrada*, 917 F3d at 1310 (II) (B).

15

citizenship or whether they are lawfully present. See OCGA § 17-10-1.3 (b). This is an important distinction, as not all persons unlawfully present in the United States are subject to removal. See *Arizona v. United States*, 567 U.S. 387, 396 (II) (A) (132 SCt 2492, 183 LE2d 351) (2012) ("Congress has specified which aliens may be removed from the United States and the procedures for doing so. Aliens may be removed if they were inadmissible at the time of entry, have been convicted of certain crimes, or meet other criteria set by federal law." (citing 8 USC § 1227)).

OCGA § 17-10-1.3 also expressly identifies the governmental interest at stake as "the interest of the state in securing certain and complete execution of its judicial sentences in criminal and quasi-criminal cases." OCGA § 17-10-1.3 (c) (1). There cannot be any serious dispute about whether this interest is legitimate. See *King v. State*, 272 Ga. 788, 791 (1) (535 SE2d 492) (2000) ("Clearly, law enforcement and public safety are compelling and legitimate state purposes."). Generally, criminal and sentencing statutes further the State's interest in deterring and punishing activities that the

16

General Assembly has deemed harmful to public safety and the welfare of persons within Georgia. Legislation that governs how prison sentences may be served, such as those laws providing for probation and parole, balance the State's interest in the deterrence and punishment of crime, among other interests, against the monetary, societal, and other costs to the community and to the person sentenced of his or her continued incarceration. See generally OCGA § 42-8-20 et seq. (the State-wide Probation Act); Ga. Comp. R. & Regs., r. 475-3-.05 (prescribing the factors to be considered by the State Board of Pardons and Paroles when considering whether to grant an inmate parole). Ensuring that a convicted person's sentence is served without being cut short by his or her removal from the country is closely associated with Georgia's general interest in the punishment and deterrence of crime, as well as the public's faith in the "certain[ty]" of lawful criminal sentences issued by the judiciary. OCGA § 17-10-1.3 (c) (1).

Having identified OCGA § 17-10-1.3's classificatory scheme and determined that the State's interest at issue is legitimate, we

must evaluate whether the former bears a rational relationship to the latter. OCGA § 17-10-1.3 (c) (3) permits sentencing courts, "[w]here appropriate," to "decline to probate a sentence" of a person subject to deportation "in furtherance of the state interest." OCGA § 17-10-1.3 (c) (3). This relationship is rational: if probating a convicted person's sentence would result in the person's deportation, this would frustrate the State's interest in ensuring the completion of that sentence. Similar observations have been made by other state appellate courts across the country. See, e.g., *People v. Sanchez*, 190 Cal. App. 3d 224, 231 (I) (1987) ("Obviously, a convicted illegal alien felon, upon deportation, would be unable to comply with any terms and conditions of probation beyond the serving of any period of local incarceration imposed. These are legitimate factors for consideration by the trial judge in determining whether or not to grant probation in a particular case." (citation and punctuation removed)); *State v. Svay*, 828 A2d 790, 791 (Me. 2003) ("[A] defendant's immigrant status and the effect that criminal convictions and criminal sentences can have on deportation are

18

factors that a sentencing court can consider."); *People v. Hernandez-Clavel*, 186 P3d 96, 99 (II) (Colo. App. 2008) ("[W]e agree with those courts in other jurisdictions that have determined that the surrounding circumstances of a defendant's alien status may be relevant to a sentencing court's decision whether to grant or deny probation."). Because the classification scheme in OCGA § 17-10-1.3 bears a rational relationship to the legitimate governmental interest expressly advanced by the statute, it survives rational basis review, and Appellant's facial challenge to this statute fails.

(b) Appellant further argues that, to the extent the trial court applied OCGA § 17-10-1.3 when issuing his sentence, it did so unconstitutionally because it based his sentence "solely" on his immigration status. Though the trial court did not mention OCGA 17-10-1.3 in its oral pronouncement of Appellant's sentence, its written order makes clear that it "considered [Appellant's] status as an illegal alien as a factor in formulating its sentence as contemplated by . . . O.C.G.A. § 17-10-1.3" and that the statute is "constitutional . . . as applied in this case." Because the trial court

relied on OCGA §17-10-1.3 in sentencing Appellant, we consider Appellant's as-applied challenge here.

Appellant argues that the trial court impermissibly based his sentence "solely" on his immigration status in violation of the Due Process Clause, and that, in doing so, the trial court treated him differently than other persons convicted of the same crimes, in violation of the Equal Protection Clause. In support of these claims, Appellant emphasizes the trial court's remarks that it generally reduces a defendant's sentence where the defendant "accept[s] responsibility" and "causes the family not to have to go through the rigors of trial," as Appellant did here, but that the trial court, by its own admission, did not afford his plea with the "normal, usual impact" precisely because "I.C.E. is going to remove him from this country."[8]

---

[8] Following sentencing but prior to the trial court's ruling on Appellant's constitutional challenges, Appellant filed a "Notice of Supplement to the Record" with the trial court containing copies of five judgments from the Mountain Judicial Circuit from the last 10 years in which defendants either received a sentence with less time served for homicide by vehicle and driving under the influence or received the same time served but the crime involved

We have already determined in Division 2 (a) (ii) that where a trial court has determined that the person to be sentenced is subject to deportation, it may, within the bounds of the Due Process and Equal Protection Clauses, decline to probate the person's sentence to ensure that it is not frustrated by deportation. This is precisely what the trial court did here.

The trial court began by stating that where "there's been a life taken," it generally starts with the maximum punishment. Under Georgia law, the trial court has such discretion. See *Taylor v. State*, 315 Ga. 630, 639 (3) (b) (884 SE2d 346) (2023) (explaining that "sentencing judges generally are afforded wide discretion" so long as the sentence issued falls within the prescribed statutory range and is otherwise constitutional). The trial court noted Appellant's acceptance of responsibility and the beneficial impact such

---

more than one death.

The copies of these judgments were not certified, however, and even if they were certified and we could consider them, Appellant has provided no information about the immigration statuses of these other defendants. Without this information, Appellant has not carried his burden to demonstrate a difference in treatment based on lawful presence or lack thereof.

acceptance had for Zajdowicz's family. But when considering whether to probate any portion of Appellant's sentence as a result of his guilty plea, the trial court explained that "if [Appellant] does not serve the time in the State's penitentiary," then he would be removed from the country, rather than serve the remainder of his sentence. The trial court further explained that it had "no control over what happens in Mexico if [Appellant] is taken back to Mexico and released and lives a free life. *That is not justice to me.*" (Emphasis supplied). The record shows that the trial court determined that 15 years was a just sentence for killing Zajdowicz, and that Appellant would not serve any probated portion of that sentence due to his impending deportation. The trial court accordingly issued a sentence of 15 years to serve — two years less than the maximum possible punishment for Appellant's crimes if each of his sentences was served consecutively. The record offers no evidence that the trial court based its sentence on discriminatory animus towards undocumented noncitizens. We accordingly hold that the trial court did not violate the Due Process Clause or the

Equal Protection Clause when it applied OCGA § 17-10-1.3 to Appellant and declined to probate any portion of his sentence.

3. Because Appellant's argument in support of his as-applied challenge to OCGA § 17-10-1.3 is identical to his argument in support of his general claim that his sentence is unconstitutional under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, Appellant's general claim also fails.

*Judgment affirmed. All the Justices concur.*